JOHN MAYNARD LUMBER CO. v. BRAZELL et al.

No. 3345.

Court of Civil Appeals of Texas. Amarillo.

April 23, 1930.

Rehearing Denied June 4, 1930.

878

S. E. Fish and Earl Wyatt, both of Amarillo, for appellant.

F. H. McGregor, F. A. Cooper, J. E. Anderson, and Underwood, Johnson, Dooley & Simpson, all of Amarillo, for appellees.

HALL, C. J.

On August 25, 1926, J. S. Marshall and wife entered into a contract with C. B. Vick, which provides that Vick is to furnish the labor and necessary material for the construction of an apartment house for Marshall and wife for the recited consideration of $12,100. The consideration is evidenced by three promissory notes executed by Marshall and wife on the same day and delivered to Vick. Brazell & Nichols, as subcontractors, were to do the necessary painting on the building. J. T. Saunders and Jess Whatoff were also subcontractors undertaking to do certain portions of the work. On the day of their execution, the notes of Marshall and wife to Vick were assigned by the payee to J. N. Maynard individually, who a few days later assigned them, together with the mechanic's lien given to secure their payment, to the John Maynard Lumber Company. The house was constructed, the Marshalls moved into it, and Brazell & Nichols, who had not been paid for painting it, filed suit numbered 5394 in the district court of Potter county against Vick, the Marshalls, Maynard, and the Maynard Lumber Company. Later the Maynard Lumber Company filed suit numbered 5475 in the district court against the Marshalls and Vick, praying for judgment on two of the Marshalls' notes.

There is no order in the record consolidating these two suits, but from the briefs of the parties it appears that they were tried together and judgment entered as in one case. Ninety-three pages of the hundred and fifty-nine page transcript are taken up in setting out the pleadings of the parties in these two suits. We presume that the cases were consolidated, as that fact seems to be conceded by all parties, but the rule, where cases are consolidated, is to order all parties to replead, and the trial court, as a part of said order, should fix the position of the respective parties in the consolidated case. 1 Tex. Jur. p. 682, § 64; Avery v. Popper (Tex. Civ. App.) 45 S. W. 951; Ralston v. Aultman, Miller & Co. (Tex. Civ. App.) 26 S. W. 746; Wright v. Chandler (Tex. Civ. App.) 173 S. W. 1173.

The failure of the trial court to order the parties to replead has resulted in great confusion in so far as the statement of the issues made by the pleadings is concerned, but, since the appellant company presents no issue here with reference to the sufficiency of the pleadings, it becomes unnecessary to make a detailed statement of them. Suffice it to say that Brazell & Nichols, who filed suit No. 5394 against Vick, the Marshalls, Maynard, and the Maynard Lumber Company to recover the amount alleged to be due them for painting, subsequently filed their first amended original petition in said cause, in which they also made Saunders and Whatoff defendants.

In reply to the amended petition, the defendants Maynard and the Maynard Lumber Company answered by general demurrer, several special exceptions, and a general denial. The original petition of the lumber company against Marshall and Vick to recover upon two of the Marshall notes and foreclose the mechanic's lien was answered by Marshall, who pleaded homestead; that he made no contract with any one except Vick, and further that, at the time the notes were executed, Vick, Maynard, and the lumber company agreed in writing to accept two certain lots in Amarillo in payment of one of the notes; that he made application to a loan company for a loan of $9,000, to be secured by a lien on the lot and improvements covered by the mechanic's lien contract, and that this loan was to extend the time of payment of the $9,000 mechanic's lien note; that such loan was procured at the instance and request of the lumber company; that it was agreed that the deed of trust securing the loan company was to be placed in escrow and not to be delivered until all bills of every kind and character incurred by Vick had been paid; that, in violation of this agreement, the lumber company transferred and delivered the $9,000 note and trust deed to the loan company, whereby the lumber company became liable and bound to Marshall to fully complete the building according to the plans and specifications.

In response to special issues submitted, the jury returned, in effect, the following verdict:

(1) That the contract between Marshall and Vick for the erection of the building involved in this suit was made by Vick for the use and benefit of the Maynard Lumber Company.

(2) That, in consideration of the assignment by Vick to John Maynard of the Marshall notes, the John Maynard Lumber Company agreed that it would pay for or furnish all the materials and labor necessary for the construction of the building in question, according to the plans and specifications.

(3) That, when Vick assigned the notes and materialman's lien to Maynard, the amount of material and money which the lumber company was to furnish in consideration for said notes was sufficient material and money to complete the building according to contract.

(4) (In response to this issue, the jury was unable to state in money the amount of material, labor and funds furnished by the lumber company.)

(5a) That said Saunders filed his lien statement of record.

(5b) That, at the time Saunders gave notice, Marshall had $259.11 of the contract price in his hands.

(5c) That Saunders was entitled to $159.11.

(6) That the sum of $210 was due Jess Whatoff for building mantles.

(7a) That Vick furnished material paid for with his private funds.

(7b) The value of the materials furnished by Vick is $500.

(8) That, prior to the time the premises were occupied by Marshall, Maynard agreed that he would see that the improvements were completed.

(9) That the extras which went into the building and were not covered by the original contract amounted to $148 in value.

(10) That the reasonable value of the items deducted from the original contract and plans with Marshall's consent amounted to $165.

(11) That exclusive of the items deducted from the plans, the reasonable cost of additional labor and materials necessary to complete the building in accordance with the contract, is $714.05.

(12a) That Brazell & Nichols did not furnish all the material and labor necessary to complete the painting as provided in the contract.

(12b) That it would take $500 more to complete the painting according to contract.

(13) That Vick accepted the painting job done by Brazell & Nichols as completed.

Based upon this verdict, the court rendered a judgment against the John Maynard Lumber Company in favor of Brazell & Nichols for the sum of $1,100, with interest; in favor of Saunders for $159.11; in favor of Vick for $500, and further decreed that Marshall should convey the lot in Amarillo to the Maynard Lumber Company in payment of one of the notes. The judgment further cancels the two Marshall notes sued upon, and decrees a recovery in favor of Marshall against the lumber company in the sum of $360.49; that none of the other parties in the two suits recover anything.

By the first nine propositions, the appellant lumber company insists that there is no legal evidence, and that the evidence introduced is insufficient to sustain the verdict and

**880**

judgment in the particulars set out in the several propositions.

The remaining eight propositions attack the verdict and findings upon practically the same grounds. We find that in setting out the testimony under these various propositions the appellant does not quote the testimony of all of the witnesses introduced upon the various issues.

Court of Civil Appeals rule No. 31 requires that a correct and accurate statement of the record bearing upon the respective propositions should be made by the appellant, and, where the error relates to the admission or rejection of evidence, there shall be quoted the full substance of the evidence admitted or rejected. Kansas City, M. & O. Ry. Co. v. Whittington & Sweeney (Tex. Civ. App.) 153 S. W. 689.

We have before us, however, four briefs filed by the several appellees, and from them, supplemented by reference to the statement of facts, we are able to dispose of these various contentions, notwithstanding the failure of appellant's brief to comply strictly with the rule.

The first contention to be considered is that there is no legal evidence to show that either John Maynard or the Maynard Lumber Company were other than purchasers and assignees of the mechanic's lien notes or that the contract between Marshall and wife and Vick was made for the benefit of the Maynard Lumber Company. In this connection, the appellees insist that Vick was not in fact the real contractor, and that the contract, though made in his name, was for the use and benefit of John Maynard and the lumber company.

The relation of principal and agent may be established by circumstances. 2 Tex. Jur. 506, § 109; Daugherty v. Wiles (Tex. Com. App.) 207 S. W. 900; Bradstreet Co. v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768.

John Maynard testified that he was the president and general manager of the John Maynard Lumber Company, and was the active manager of the company throughout all of the transactions involved in the two cases which were tried together. The Maynard Lumber Company alleges the financial irresponsibility of Vick. John Maynard testified that he learned that Marshall contemplated building an apartment house, and that he took his book and went to see Marshall, introduced himself to Marshall and wife, and encouraged them to enter into the contract. He further admits that he helped to draw out a plan to work from and from which to help draw up the plan that Marshall wanted; that he had a lot of lumber he was anxious to sell.

Before the Marshalls entered into the written contract with Vick, Maynard endeavored to get them to let the contract to other contractors whom he represented as being solvent and financially able to complete the contract. But, after the Marshalls insisted upon letting Vick have the contract, Maynard wrote a part of the contract himself, and the remainder was written by employees in his office and under his directions. When Marshall suggested to Maynard the advisability or having Vick execute a bond to secure the performance of the contract, Maynard told Marshall that the latter did not need a bond because he (Maynard) would have more money in the job than Marshall would nave, and that the company was really financing the job, and that he (Maynard) knew Vick had no money, and he persuaded the Marshalls to waive the question of bond. Maynard testified that Vick could not make bond, and Vick told him that he (Vick) had $1,000 profit in the contract, and for that reason he (Maynard) was anxious for the deal to go through.

It was shown that, before the Marshalls and Vick signed the contract, Maynard went over the plans and specifications with them, and he went with Vick to see Marshall about signing it. He not only wrote and dictated the contract between the parties, but also wrote the notes which the Marshalls signed. It further appears that, at the time the contract was executed, Maynard agreed to accept Marshall's equity in two lots as part payment for the building and wrote the contract, which provided for the payment of one of the notes by the conveyance of the lots. This agreement to take two lots it seems was in Vick's name, but Maynard testified that he took all three of the notes representing the consideration and amounting to $12,100. It further appears that, on the day the contract and notes were executed, they were assigned by Vick to Maynard, the assignment reciting a cash consideration of $12,100. Maynard testified that he paid no cash for the assignment. The assignment of the notes from Maynard to his lumber company recites: "Now, Therefore, in consideration of the furnishing of certain material and making certain advances to cover labor and other items in the construction of the building, I, the said Maynard have this day bargained, sold, conveyed," etc.

Maynard testified that he did not pay any cash, and that they did not get anything "unless you might call the assurance that I would go ahead and furnish the material and money" something. He further testified: "Instead of the consideration being $12,100.00 for the assignment of those notes, the consideration actually was my promise to furnish the material and some money for the construction of the building."

At the time of the assignment of the notes, nothing whatever had been done toward the construction of the house. While the build-

ing was under construction, the Maynard Lumber Company paid the labor bills in the amounts reported to them by Vick, and also paid subcontractors on the order of Vick. They paid the plumber, the plasterer, and the electrician, paid for the brick, and kept accounts with all the subcontractors except Brazell & Nichols and Whatoff. During the progress of the building, the lumber company paid Vick the regular scale of wages as long as he stayed on the job. Vick testified: "I was superintending the job. I hired the contractors and when their work was completed, I gave them an order on Mr. Maynard for their money. That was in keeping with my agreement with Mr. Maynard in the beginning. When I assigned these notes, he was to furnish me with money and material and I was to give these orders to the subcontractors."

On this point Maynard testified: "I paid the labor bills of the men who worked on the contracts—paid some of them. We paid those men by check just to each man to whom Mr. Vick instructed us to pay on receipt of an order from him. He gave us some orders for some work of the subcontractors, which we paid."

Vick abandoned the job before it was finished, whereupon the Marshalls went to see Maynard about it, and Maynard said, "We just as well get Vick out of the way," and stated that he would see that the job was completed. Maynard agreed to give Marshall permission to move into the house.

Mrs. Marshall testified that John Maynard said he would have to assume the contract, and that Maynard had talked them out of requiring Vick to give a bond, stating as his reason that he (Maynard) would have to complete the building. It appears that, after Vick abandoned the job, Maynard did actually complete it. He put in roll-away beds, furnished the plumbing and installation of light fixtures, and put in wall heaters, doing all that was done after Vick walked out. The lumber company had the débris removed from around the house and premises, and told the Marshalls to forget about Vick, for he was out of it entirely. Maynard settled with the plumbers without consulting Vick. The painting job had just started when Vick abandoned it.

There is no testimony showing that Vick participated in any profits derived from the construction of the building or that he was paid any more than his daily wages for his services.

█ This testimony was all admissible upon the issue of whether Vick was the real contractor or merely a stool pigeon for Maynard and the lumber company, and we think is sufficient to sustain the finding of the jury upon the issues relating thereto.

It is contended under the third proposition that there was no legal evidence whatever showing that John Maynard or the lumber company agreed with Vick to pay for and furnish all materials and labor necessary for the construction of the improvements. There is testimony directly upon the issue from Vick and from Marshall and wife, some of which is quoted above. The record shows that the lumber company did furnish the materials and pay for all the labor except as to the three subcontractors who are parties to this suit. According to Mrs. Marshall's testimony, if true, Maynard did not consider Vick as really an interested party and liable for the performance of the contract. Vick testified that he was only superintendent, and as such was paid his daily wage by the lumber company, it seems, in the same way that other laborers engaged in work upon the building were paid.

█ The testimony of Marshall and wife sufficiently sustains the jury's finding in response to the eighth issue that, prior to the time the premises were occupied by Marshall, Maynard agreed to see that the improvements on the premises were completed, and it is not denied that, after Vick quit the job, Maynard was there several times inspecting the work and the condition of the building. According to Maynard's own testimony, he never did deny liability for the painting job, and this work was completed after Vick abandoned the job, and the testimony shows that John Maynard endeavored to sell Brazell & Nichols paint for use in fulfilling their subcontract, and must have known that Vick had sublet the painting contract to that firm.

It is insisted that there is no legal evidence adduced showing the cost of additional labor and material to complete the building according to contract, and no competent evidence offered of any money expended by the Marshalls in completing the building.

█ The jury was not asked by special issue No. 11 how much money Marshall had paid out in completing the building to make it comply with the plans and specifications, but the inquiry was as to the reasonable cost of such additional labor and materials necessary to complete the building, exclusive of certain items. Marshall gave a detailed statement of the several items and the cost thereof necessary to complete the building, which amount to the sum of $852.60, and the jury found that $714.05 would be necessary. The appellant did not request a finding upon each of the several items, and, in the absence of such specific request and finding, every presumption must be indulged in favor of the correctness of the verdict.

"Upon an appeal or writ of error, all reasonable presumptions and intendments will be indulged to support the verdict or findings of a jury. It will be presumed that the

jury duly considered the evidence and observed the instructions of the court, following them as far as they were able. No presumption will be indulged that a jury finding supported by the evidence was biased or prejudiced. The findings of a jury are presumed to be impartial. A reviewing court will consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party who obtained the verdict; that is to say, every presumption arising from the evidence will be resolved in favor of the verdict or the judgment based thereon in the absence of a showing to the contrary. In considering controverted issues of fact, the Appellate Court will accept as true that testimony which tends to support the verdict and judgment." 3 Tex. Jur. 1057, § 745.

██ The only bill of exception in the record to any of the items testified to by Marshall relates to his testimony as to the cost of repairing some defective cement work, and this cost he estimated at $50. We cannot say that the jury took that item into consideration in answering special issue No. 11 and fixing the total amount at $714.05. The burden of showing error rests upon the appellant. In determining the sufficiency of the evidence to sustain a verdict, the evidence must be accepted in the light most favorable to the successful party in the trial court, and the plaintiff's testimony must be accepted as true. Wick v. McLennan (Tex. Civ. App.) 186 S. W. 847.

In so far as Vick sought to recover against appellant, he testified to items and amounts paid by him out of his own funds in excess of $500, and the jury found he had paid out of his private funds $500. What is said above with reference to the finding of the jury in answer to issue No. 11 is applicable to the appellant's contention in attacking the jury's finding as to the value of the materials furnished by Vick.

██ The cross-action of Brazell & Nichols is based upon an express contract which fixes their compensation at $1,100. The only pleading in reply to this cross-action filed by the lumber company is a general denial. The evidence shows that Vick sublet the painting to Brazell & Nichols, and that Maynard and the lumber company had knowledge of that fact. Vick was superintendent of the work, and it is further shown that he accepted the painting work and gave Brazell & Nichols an order on Maynard and the lumber company for the amount due, which Maynard said they did not pay but just put off paying until he could check up on the painting job. If the painting was not done according to contract, the lumber company should have so alleged, and should have shown by their pleading and evidence wherein it failed to comply with the contract. If the acceptance of the work by their superintendent, Vick, was the result of fraud or mistake, this should have been alleged. In the absence of any such allegations, Vick's acceptance is a waiver of all defects and of the lumber company's right to defend the action of Brazell & Nichols to recover the contract price. Phelps v. Connellee (Tex. Com. App.) 285 S. W. 1047; Butterworth v. Kinsey, 14 Tex. 495; Pagenkopf v. Phelps (Tex. Civ. App.) 253 S. W. 619; Hall v. Cook (Tex. Civ. App.) 117 S. W. 449; Deal v. Craven (Tex. Com. App.) 277 S. W. 1046; Collier v. Betterton, 8 Tex. Civ. App. 479, 29 S. W. 490; volume 2, "Page on Contracts," § 3048; "Williston on Contracts," 724.

Vick's right to recover for money expended by him in the prosecution of the work of constructing the building according to contracts cannot be seriously questioned. The jury found that he superintended the work for his principals, Maynard and the lumber company.

"In the course of the execution of the agency, the agent may not infrequently pay out his own money or become liable to pay it in meeting the expenses which arise in performance of the agency. The agent may also in executing the principal's commands expose himself to legal claims or incur legal obligations to third persons who are injured by the fact or the manner of the agent's execution of the principal's directions. In either case, the agent may have a claim against his principal by reason of the expense or liability thus incurred." 1 Mechem on Agency (2d Ed.) § 1600.

"The performance of the agency is undertaken for the benefit of the principal. To him belong all the profits and advantages resulting from its execution. He is also entitled to all the profits and advantages acquired by the agent during the course of the performance. It is eminently just and proper, therefore, that the principal should bear the natural and legitimate burdens of the transaction and that the agent should not be called upon to suffer loss or injury for his acts done in the proper discharge of his duties and such is the rule of law. The agent is entitled to be reimbursed by the principal for all of his advances, expenses and disbursements made in the course of his agency on account of or for the benefit of his principal, when such advances, expenses and disbursements have been properly incurred and reasonably and in good faith paid without any default on the part of the agent." Id., § 1601. Whitmore v. Nelson (Tex. Civ. App.) 29 S. W. 521; Frank v. Waldrup (Tex. Civ. App.) 71 S. W. 298.

██ The evidence shows that some of the materials purchased and paid for by Vick were bought by him in the presence of Maynard, that all of it went into the building, and

no question is made as to the reasonableness of the expenditures. We think, therefore, that Vick was entitled to recover the amount awarded him by the jury.

By proper bill, the appellant reserved exceptions to the action of the court in permitting Marshall to testify with reference to the amount necessary to repair and complete the cement work in accordance with the plans and specifications. He fixed this amount at $40 to $50, but his evidence fails to show that he was qualified as an expert to testify as to the amount necessary to do the work. Other witnesses, however, without objection, and whose qualifications are not questioned, testified as to the probable cost of doing the work over. Vick fixed the amount at $100.

The record further shows that the cost of the various items testified to by Marshall necessary in order to complete the building according to plans and specifications amounted to $852.60. Of this amount sought to be recovered by Marshall the jury gave him $714.05, and, as we have said above, we cannot presume that the jury took the $50 testified to by Marshall into consideration, and the error, if any, in permitting Marshall to testify with reference to the cost of the cement work, is harmless.

We find no reversible error, and the judgment is affirmed.