MISSOURI VALLEY, INC., Appellant,

v.

Juanita Lucille PUTMAN, et al., Appellees.

No. 9145.

Court of Appeals of Texas, Amarillo.

Jan. 29, 1982.

**830**

Stokes & Fields, Thomas D. Farris, Richard E. Stokes, Jr., Amarillo, for appellant.

C. J. Humphrey, Amarillo, for appellees.

Before REYNOLDS, C. J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Juanita Lucille Putman, individually and as next friend for her two minor children, sought exemplary damages from, and recovered a $50,000 jury verdict judgment against, Missouri Valley, Inc. for its gross negligence resulting in the death of her husband, Haskell B. Putman, Jr. On appeal, we sustained Missouri Valley's no evidence points, reversed the trial court's judgment and rendered a take-nothing judgment. We held as a matter of law that the evidence failed to affirmatively show an entire want of care on the part of Missouri Valley which would lead to the belief that its negligence was the result of conscious indifference to the rights and welfare of Putman, it being evidenced that "some care" was exercised by Missouri Valley to avoid the accident from which Putman died. *Missouri Valley, Inc. v. Putman*, 604 S.W.2d 545 (Tex.Civ.App.—Amarillo 1980, writ granted).

After granting the writ of error, the Supreme Court decided *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex.1981). In *Burk*, the Court disapproved the use of the "some care" test in determining legal sufficiency points and overruled those cases applying it. *Id.* at 922. The Court accepted the definition of gross negligence as the ground for exemplary damages to be

> that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it,

*Id.* at 920, the exact definition we used in our original opinion. 604 S.W.2d at 547–48. The Court declared that the traditional no evidence test should apply in testing a jury finding of gross negligence, *Burk Royalty Co. v. Walls, supra,* at 920, but that in applying it, "the reviewing court must look to all of the surrounding facts, circumstances, and conditions, not just individual elements or facts." *Id.* at 922.

In the light of the teachings of *Burk*, the Court found some evidence favorable to the jury's finding of gross negligence on the part of Missouri Valley, reversed our judgment, and remanded the cause for our determination of Missouri Valley's points of error which were rendered immaterial under our former holding. *Putman v. Missouri Valley, Inc.*, 616 S.W.2d 930 (Tex.1981). Pursuant to the following address of all of the points of error, generally rather than seriatim, in reference to the record, we now overrule them and affirm the judgment of the trial court.

Missouri Valley contracted with Southwestern Public Service to build the Harrington Station # 2 power plant in Potter County. Haskell B. Putman, Jr., a nineteen-year experienced pipefitter, was employed by Missouri Valley on the project as a member of a pipefitter crew. On Wednesday, 4 May 1977, Putman and the pipefitter crew began working on the third level of the plant along with a boilermaker crew, two of whom were Green and Lightfoot, and the foreman of which was Roy Thomas.

The flooring on the third level consisted of moveable panels of steel grating eight feet long and two or three feet wide. On Wednesday, Thursday and Friday, a panel was moved to lift up construction equipment and tools from the area below. Since Wednesday, the hole created by the moved panel had been guarded by permanent steel railings on its north and south sides, and by a ¾ inch Manila rope on the east and west sides. From time to time the rope barricade was taken down, but it was Missouri Valley's experience that the crewmen were diligent in replacing the rope barricade. The only testimony bearing on whether the grate was in place or removed was that if the rope was removed, it signified the grate was in place and there was no floor opening.

The hole was guarded by the railings and ropes when the construction workers arrived on Friday morning, 6 May 1977. Shortly after 8 a. m., Thomas, perhaps with the help of a member of his crew, removed the rope barrier, and the rope was used to pull equipment up from a lower level. Putman crossed the hole, but the witnesses were not able to agree whether it was before or after the rope barrier was removed.

Thomas remained in the area for a while and then, leaving the hole unbarricaded with two of his crew members in the vicinity, left to get some equipment. Within eight to twenty minutes later, Putman approached the hole. While looking upward, he stepped into the hole and fell some fifty feet, sustaining injuries from which he died.

By its contract with Southwestern Public Service, Missouri Valley, which had its own safety rules, agreed to abide by all of the Occupational Safety and Health Administration rules and regulations. A copy of OSHA's rules and regulations was given to Missouri Valley's general foreman and superintendents, who were instructed to enforce them. Crew foremen were also charged with the duty of enforcing safety rules and regulations, but they were not provided a copy of OSHA's rules; they received the information by word of mouth.

Each employee was given time to read Missouri Valley's safety rules and required to sign a statement that he had read and agreed to follow them. The crew foremen were required to hold safety meetings with their own members each Monday morning. The foremen required the crew members to sign a paper indicating that a safety meeting had been held; however, Lightfoot, a member of Thomas' crew, testified there really was no serious effort to sit down and discuss safety. The president of Missouri Valley said that there was no subjective testing to see if the employee understood what the safety rules meant.

OSHA's rules provide that temporary floor openings should have standard railings; Missouri Valley's rules made no reference to such openings, and its foreman was given discretion as to the type of protective barrier that would be used around them. Thomas did not testify, but a carpenter foreman employed by Missouri Valley testified that the rope barricade was used because it is "the fastest and easiest way," for

the barricade had to be removed several times a day. Although Missouri Valley did not receive a citation from OSHA for using rope as guard rails, a consulting engineer testified that the use of rope to barricade a temporary floor opening does not comply with OSHA standards. His opinion was that using rope in such a manner is most unsafe and subjects workers to undue hazards.

The jury found, corresponding to the special issue numbers, that: (1) Missouri Valley failed to provide Putman with a reasonably safe place to work, (2) such failure was gross negligence and (3) a proximate cause of Putman's death; (4) Thomas, as foreman, had the authority to require barricades around temporary floor openings; (5) Thomas removed the rope barrier, which was (6) gross negligence and (7) a proximate cause of Putman's death; (8) Thomas left the immediate area without replacing the rope barrier, which was (9) gross negligence and (10) a proximate cause of Putman's death; and (15) that Putman, Green and Lightfoot were fellow servants. The jury failed to find that (11) Putman failed to keep a proper lookout, or that (13) Green and Lightfoot's failure to replace the grate flooring or rope barricade was negligence. The jury (20) apportioned the percentage of negligence as follows: Thomas 40%; Putman 0%; Green and Lightfoot 0%; Missouri Valley 60%.

■ In connection with the jury's verdict, it is appropriate to remember that exemplary damages are recoverable from a corporation only for the grossly negligent acts of the corporation itself, which acts through its corporate agents such as a vice-principal, or its servant's or employee's acts which were previously authorized or were subsequently ratified. *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 406 (1934). However, the corporation owes to its employees certain absolute or nondelegable duties and, even if the duties are delegated, the corporation itself remains responsible for the manner of their performance. Among such duties are the duty to provide rules and regulations for the safety of employees and the duty to furnish its servants with a reasonably safe place to work. *Id.* at 401.

In arriving at its verdict, the jury was the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. To resolve the testimonial conflicts and contradictions, the jury was privileged to believe all, part or none of the testimony of any one witness in reaching the verdict it concluded was most reasonable under the evidence. *United States Fire Ins. Co. v. Biggs*, 614 S.W.2d 496, 497 (Tex. Civ.App.—Amarillo 1981, no writ).

Given the jury findings of gross negligence and the Supreme Court's determination there is evidence favorable to the findings, 616 S.W.2d at 931, Missouri Valley's no evidence points of error. are no longer viable, for we are bound by the findings. *Burk Royalty Co. v. Walls, supra*, at 921. We consider then, Missouri Valley's factual insufficiency point, considering all of the evidence to determine if the evidence in support of the findings is so weak, or the contrary evidence is so overwhelming, that the findings should be set aside. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ From the evidence recounted above, the jury could believe that Missouri Valley itself, aware of the practice of making temporary floor openings, did not provide safety rules regulating them and did not enforce the OSHA rules and regulations respecting such openings, relying instead on the safety meetings that were merely a matter of form. Moreover, Missouri Valley gave its crew foremen discretion to perform its nondelegable duty of providing safety rules in this matter, and the jury could further believe that Thomas chose the rope barricade, which was most unsafe and subjected the workers to undue hazards. And further, the jury could believe that these circumstances of the physical condition of the premises constituted an unsafe place to work. *Cf. Gonzales v. Lubbock State School*, 487 S.W.2d 815, 817 (Tex.Civ.App.—Amarillo 1972, no writ) (holding that the safe place to work which the employer has the duty to provide embraces the physical condition of the premises).

This evidence supports the jury findings of gross negligence, *see Burk Royalty Co. v. Walls, supra,* at 923, and we are not authorized to substitute our judgment for that of the jury, even though we might have reached a different factual conclusion. *Continental Bus System, Inc. v. Biggers,* 322 S.W.2d 1, 4 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.). Considering this evidence in context with all of the evidence, we cannot say that it is factually insufficient to support the jury findings of gross negligence.

■ Missouri Valley has a series of points pertaining to the lack of a legal establishment or a factual determination that Thomas was a vice-principal of Missouri Valley, thereby permitting a double submission of the same theory of recovery. It suffices to state that Mrs. Putman does not contend that Thomas was, and we agree with Missouri Valley's assessment that as a matter of law he was not, a vice-principal under the pronouncements of *Fort Worth Elevators Co. v. Russell, supra,* at 406. Missouri Valley's liability is, and the jury submission was, predicated, not on Thomas' status as a vice-principal, but on his grossly negligent performance as an employee of Missouri Valley's nondelegable duty to provide safety rules and regulations, and on Missouri Valley's grossly negligent failure to provide Putman with a reasonably safe place to work. *Id.* at 401. Under this state of the record, the points are not valid.

■ Missouri Valley also complains of the court's failure to submit its requested issue inquiring whether Green, Lightfoot, Putman and Thomas were fellow servants in compliance with its pleaded defense that a master is not liable to one servant whose injury was proximately caused by the negligence of a fellow servant engaged in the same enterprise. *Cactus Drilling Company v. Williams,* 525 S.W.2d 902, 910 (Tex.Civ. App.—Amarillo 1975, writ ref'd n.r.e.). The complaint is unavailing, for the principle is inapplicable where the negligence is committed by a fellow servant whose acts, such as performing a nondelegable duty, become the acts of the master. *Fort Worth Elevators Co. v. Russell, supra,* at 408.

The same rationale furnishes an adequate basis for overruling the points by which Missouri Valley contends that the jury's failure to find any negligence on the part of, or apportion any percentage of negligence to, Green and Lightfoot is against the great weight and preponderance of the evidence. Furthermore, we cannot say that the jury's failure to find that Green and Lightfoot were negligent is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

■ It is Missouri Valley's position that the jury's failure to find Putman failed to keep a proper lookout is against the great weight and preponderance of the evidence because it was proved conclusively that he was not looking where he was going. We do not agree that the point should be sustained. The jury was entitled to consider all of the testimonial facts, including the fact that it was considered safe to walk in the area if the rope barricade was not in place. Again, the question is not what conclusion we might have reached, but the question is whether the jury, under its prerogatives, could believe that Missouri Valley failed to persuade it by the preponderance of the evidence that Putman failed to keep a proper lookout. Under this record, we cannot deny them that belief.

■ Finally, Missouri Valley submits that reversible error occurred during Mrs. Putman's final jury argument. The submission is founded on defense counsel noticing that Mrs. Putman's counsel had exhibited a ½ inch Manila rope and hangman's noose to the jury. While Missouri Valley attributes spoken words associated with the exhibit, the argument was not recorded and the record before us contains no certified transcript of the language allegedly employed so as to present a proper bill of exceptions. *Adams Leasing Company v. Knighton,* 456 S.W.2d 574, 575 (Tex.Civ. App.—Houston [14th Dist.] 1970, no writ). The trial court heard the argument, together with all other proceedings in the cause, and denied Missouri Valley a new trial on

this ground. Whether or not the argument was calculated to prejudice the rights of Missouri Valley falls within the discretion of the trial court and, absent a showing that it abused its discretion, we may not interfere. *Dyer v. Hardin*, 323 S.W.2d 119, 133 (Tex.Civ.App.—Amarillo 1959, writ ref'd n.r.e.). Under this record, we are unable to say that the court abused the discretion it exercised.

Accordingly, the judgment of the trial court is affirmed.