OLIN CORPORATION, Appellant,

v.

Darrell DYSON & David Casas, Jr., Appellee.

No. C14–82–602–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 9, 1984.

Tom Alan Cunningham, Sawnie A. McEntire, Houston, for appellant.

Larry J. Doherty, Dale Friend, Houston, for appellee.

Before JUNELL, MURPHY and DRAUGHN, JJ.

## OPINION

MURPHY, Justice.

This negligence action involves claims for personal injuries sustained by appellees Darrell Dyson and David Casas, Jr. when the car in which they were riding collided with a parked "cherrypicker," a portable crane, which was owned and operated by appellant, Olin Corporation. At the time of this occurrence the "cherrypicker" was being used to support a section of overhead pipe which ran parallel to a two lane roadway. Since there was insufficient room on the roadside, the "cherrypicker" extended four feet into one of the traffic lanes of the road. There were no flagmen, warning signs, barricades, or any other type of warning device placed around the "cherrypicker." Appellee Dyson was driving the car and appellee Casas and Robert Collins were passengers in the car. The evidence indicates that the "cherrypicker" was plainly visible to drivers on the road at the time of the collision.

Originally, Dyson and Casas each filed separate lawsuits against Olin Corporation. In the Dyson suit, the appellant pled contributory negligence as a defense. In the Casas suit appellant filed a claim against Dyson seeking contribution. These suits were consolidated. The jury found appellant to be grossly negligent in one or more of the following respects: (a) in failing to post a flagman; (b) in failing to erect barricades; (c) in failing to provide flashing lights; and (d) in leaving the "cherrypicker" on the road. The jury also found Dyson to be twenty-five percent (25%) negligent. The jury awarded Dyson $131,404.17 ($16,404.17 in compensatory damages and $115,000.00 in punitive damages). The trial court did not reduce these damages under Tex.Rev.Civ.Stat.Ann. art. 2212a (Vernon's Supp.1982–1983), the comparative negligence statute, because it ruled that the appellant failed to plead contributory negligence against Dyson. The jury awarded Casas $276,432.00; ($161,432.00 in compensatory damages and $115,000.00 in punitive damages). The trial court allowed the appellant twenty-five percent contribution from Dyson for the compensatory damages awarded to Casas.

The questions presented on this appeal are: (1) whether the trial court erroneously excluded circumstantial evidence of alcohol consumption by one or more of the persons in Dyson's car; (2) whether the trial court abused its discretion by enforcing a discovery sanction to exclude an admission of alcohol consumption by Dyson at the time of the collision; (3) whether the trial court abused its discretion by enforcing a discovery sanction to exclude evidence that Dyson attempted to bribe Robert Collins to suppress evidence of alcohol consumption by the persons in Dyson's car; (4) whether

the trial court erroneously found that appellant failed to plead contributory negligence against Dyson and therefore erred in not reducing the compensatory damages awarded to Dyson by the percentage of comparative negligence found by the jury; (5) whether there is any evidence to support the jury finding of gross negligence against the appellant; and (6) whether there is sufficient evidence to support the jury finding of gross negligence by appellant.

Before we discuss appellant's points of error related to the trial court's refusal to admit evidence of alcohol consumption and a bribe made by Dyson, we must consider his contention that appellant does not have a right to complain that such actions by the trial court were error because it never obtained a ruling from the trial judge on the admission of this evidence as required by Rule 372 of the Texas Rules of Civil Procedure. This contention is without merit. The record clearly indicates that appellant created a bill of exceptions as to the testimony of Dudley Dyson Sr. which related to the bribe. The record also shows that appellant offered circumstantial evidence of alcohol consumption through the depositions of John Forsyth, Don Anders, and Robert John Graham. The ruling of the court on the admission of this testimony is expressed in the following statement of the trial judge in the record:

> "As far as the request to offer any of the testimony elicited on the Bill of Exceptions regarding the drinking and the beer cans, your request is denied."

We believe this ruling was also intended to cover the depositions offered by appellant.

Appellant's first point of error is the trial court erred in excluding circumstantial evidence of alcohol consumption. During the trial appellant sought to offer evidence that immediately after the collision Dyson's car had a strong odor of beer, and contained an unopened cold beer, spilled beer, and loose ring tabs. Appellant sought to introduce this circumstantial evidence of alcohol consumption for the purpose of impeaching Dyson's credibility as

to the cause of the collision and to prove his contributory negligence. Circumstantial evidence of alcohol consumption is not admissible unless it is connected to the person alleged to have acted negligently. *See R.T. Herrin Petroleum Transport Co. v. Proctor,* 161 Tex. 222, 338 S.W.2d 422 (1960). In *Herrin,* 338 S.W.2d at 432 the Supreme Court held that a whiskey bottle found near the scene of a car accident should not have been admitted into evidence to prove the contributory negligence of the driver because a reasonable connection between the driver and the whiskey bottle was not established.

The trial court correctly held the circumstantial evidence of alcohol consumption inadmissible because the evidence was not probative as to whether Dyson was consuming alcohol at the time of the collision. Two passengers were riding with Dyson. It might reasonably be inferred from this evidence that at least someone in the car was consuming alcohol, but it is impossible to tell from the evidence whether Dyson was consuming alcohol. Because of the potential prejudicial effect of evidence of this nature, it should be excluded unless reasonably connected to the person alleged to be negligent. Point of error one is overruled.

At trial, Robert Collins was called as a witness by appellees to describe the events surrounding the collision. During appellant's cross-examination, Collins was asked whether he had made a deal with Dyson to be paid for his testimony. At that time appellees objected on the ground that appellant did not have a good faith basis for cross-examination concerning a deal. To establish the basis for this cross-examination appellant presented Dyson's father as a witness. He testified outside the presence of the jury that his son had admitted to drinking beer at the time of the collision and that immediately thereafter his son and Collins concealed evidence of beer in the car. Dyson's father further testified that his son admitted he had made a deal with Collins to suppress evidence that Dyson was drinking beer at the time of the

collision. The payment was allegedly to be $1,500.00 or a portion of any jury award received by him.

Appellant's points of error two through six relate to the trial court's exclusion of the entire testimony of Dyson's father and its instruction to the jury to disregard the cross-examination question concerning the "deal." The court's ruling was based on Rule 168 of the Texas Rules of Civil Procedure which authorizes the court to impose sanctions if a party fails to supplement his answers to interrogatories when an answer is later learned to be incomplete. The trial court found that appellant breached its duty to supplement its answers so as to identify Dyson's father as a trial witness in response to interrogatories seeking identification of every witness

(1) "who has seen, heard, or known about the alleged occurrence" and

(2) "who has any knowledge of any facts pertaining to the cause of the alleged occurrence or to any alleged acts of the Plaintiff," (Casas).

■ These facts present the question whether the trial court's exclusion of the entire testimony of Dyson, Sr. constituted an abuse of its discretion under Rule 168. The right to present evidence material to disputed issues at trial should not be denied unless the offering party has withheld relevant information that he has a clear duty to produce, and even then the evidence should not be excluded if the rights of the opposing party can be fully protected. *Lloyd A. Frye Roofing Co. v. State of Texas*, 524 S.W.2d 313, 319–320 (Tex.Civ. App.—Dallas 1975), reh. granted on other grnds., 541 S.W.2d 639 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.).

■ Appellant presented Dyson's father as a witness to testify to his son's admission of alcohol consumption before the collision. Obviously, Dyson's father was a witness who had heard about the alleged occurrence. Appellant had a clear duty to identify Dyson's father as a trial witness in its response to Casas's interrogatories. In these circumstances the trial court had authority under Rule 170(b) of the Texas Rules of Civil Procedure to impose the sanction of excluding otherwise admissible evidence. Appellant, however, contends that the trial court abused its discretion because it failed to discriminately apply the sanction. Appellant points out that had it presented Dyson's father as a witness to testify solely as to the alleged "deal" between Dyson and Collins to suppress evidence, appellant would not have had a duty to identify Dyson's father as a witness since the "deal" was an independent event which occurred after the collision and was not addressed by any of the interrogatories. Therefore, appellant argues, the trial court should only have excluded the portion of Dyson's father's testimony which concerned events immediately surrounding the collision. Appellant asserts that in determining the propriety of excluding testimony as a discovery sanction, the sanction should be limited to that testimony dealing with those factual issues for which discovery was sought and for which noncompliance was proved. The selective use of sanctions follows from the basic rule that sanctions are not to be used to punish. *Phillips v. Vinson Supply Co.*, 581 S.W.2d 789, 790 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ).

■ In the present case, however, the principle of selective application of sanctions cannot readily be applied to the testimony of Dyson's father. His testimony that his son admitted to having made a "deal" with Collins to suppress evidence of their alcohol consumption prior to the collision also reveals an admission by his son that he consumed alcohol just before the collision. In effect, a failure to exclude Dyson's father's testimony about the "deal" would of necessity disclose information concerning the collision, the subject of the interrogatories.

Thus, the testimony of the "deal" had to be excluded also because it was inseparably intertwined with events surrounding the collision. For this reason we hold that the trial court did not abuse its discretion in

choosing to exclude Dyson's father's testimony in its entirety.

■ Appellant further contends that permitting Dyson's father to testify before the jury would not have prejudiced the rights of the appellees, because the trial court gave appellees opportunity to discover the underlying facts of Dyson's father's testimony through cross-examination outside the presence of the jury. We disagree. Appellant knew of its intention to use Dyson Sr. as a witness some three to four months before trial. Appellant's failure to identify him through supplemental answers denied appellees the opportunity to more thoroughly question Dyson's father and to depose others who attended the meeting where Dyson allegedly made the admissions.

Appellant's seventh point of error is that the trial court erroneously found that appellant failed to plead contributory negligence against appellee Dyson and thereby denied appellant the right to have the compensatory damages awarded to Dyson reduced by the percentage of contributory negligence found against Dyson. The events which led the trial court to believe that appellant had not pled contributory negligence against Dyson were as follows. As stated earlier in this opinion, the appellees filed separate lawsuits which were consolidated on April 24, 1981. Afterwards, the appellees maintained the separateness of their pleadings and discovery efforts. On October 9, 1981, appellant filed both an amended answer to the pleadings of Dyson which included a plea for contributory negligence and an amended answer to the pleadings of Casas which included a claim for contribution from Dyson. On March 12, 1982, Casas filed special exceptions to the answer that appellant had filed in response to his petition. On April 14, 1982, appellant amended its answer to the Casas petition to respond to the special exceptions. The trial court interpreted this amended answer to be in response to both the Casas petition and the Dyson petition and to have replaced both answers filed earlier by the appellant. Because the amended answer to the Casas petition did not include a plea of contributory negligence against Dyson the trial court assumed that appellant had dropped this claim.

We hold the trial court erred in its interpretation of appellant's pleadings and that the appellant sufficiently pled contributory negligence against Dyson so as to be entitled to have the compensatory damages awarded to Dyson reduced by the percentage of his contributory negligence found by the jury.

■ The general rule of practice is that when two separate causes of action are consolidated for all purposes, the trial court should order a repleader to consolidate prior pleadings. *John Maynard Lumber Co. v. Brazell*, 28 S.W.2d 877, 878–879 (Tex.Civ.App.—Amarillo 1930, writ dism'd). However, where the trial court fails to order repleader the parties are not required to replead unless it is shown that confusion will result from retaining their earlier pleadings. *See* 3 R McDonald, Texas Civil Practice in District and County Courts § 10.24.2 (rev. 1983). In the present case, the trial court did not order the parties to replead and there is no indication that confusion of the issues resulted from the separateness of the pleadings. In these circumstances appellant was entitled to respond separately to the petitions of the appellees. It is obvious from the language and case style of appellant's Second Amended Original Answer that it was intended as a response solely to the petition of Casas. It would defy common sense to assume that appellant in this answer intended to drop its claim for contributory negligence against Dyson while at the same time maintaining a claim for contribution against Dyson for his contributory negligence. Therefore the First Amended Original Answer filed in response to Dyson's petition was not supplanted by the answer filed in response to the special exceptions raised by Casas. We find that fair notice of appellant's claim of Dyson's contributory negligence was supplied through appellant's First Amended Original Answer

to Dyson's petition in view of the unmistakable intent of appellant to respond separately to the petitions of appellees. And it was proper for appellant to have followed this practice in the absence of an order to consolidate pleadings or an objection by appellees that this practice would result in confusion of the issues.

Appellant's final point of error encompasses two contentions. The first contention is the trial court erred in rendering judgment for punitive damages on the jury's finding of gross negligence because there is no evidence to support this finding. The second is the trial court erred in denying appellant's motion for new trial because there is insufficient evidence to support the jury's finding of gross negligence.

 The definition of gross negligence under which the evidence in this case is to be reviewed is set forth by the Supreme Court in *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981):

"The essence of gross negligence is not the neglect which must, of course, exist. What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care. Such conduct can be active or passive in nature."

Stated another way, the plaintiff must produce evidence to prove two elements: (1) the defendant knew of the existence of an unreasonable peril and (2) that defendant's acts or omissions demonstrated he was indifferent to the safety of the plaintiff.

 We first review the appellant's contention that there is no evidence to support the finding of gross negligence. Before we proceed on this issue we must consider appellees' contention that appellant failed to preserve a no evidence point because it does not include in its prayer for relief a request for reversal and rendition; the appellant only requests a remand, or in the alternative, a modification. Appellant's failure to pray for rendition on their no evidence point of error constitutes noncompliance with Rule 418(d) of the Texas Rules of Civil Procedure which requires the nature of relief sought on appeal to be clearly stated. In support of their position, appellees cite Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L. Rev. 361, 372 (1960) which states:

If the language of a point of error leaves a Court of Civil Appeals in doubt as to whether it is a no evidence point, an insufficient evidence point, ... the court should resolve the doubt by looking to the procedural predicate for the point, the argument under the point, and the prayer for relief.

This court has no need to look to the prayer for relief in appellant's brief to determine whether appellant raises a no evidence point because appellant's final point of error specifically alleges legal insufficiency of the evidence. The Calvert article merely suggests that if there is doubt as to whether a no evidence or an insufficient evidence point is raised that the court should look to the prayer for relief for guidance. It does not assert that a no evidence point is not preserved if there is no prayer for reversal and rendition. We find no Texas case on the issue of whether an appellant's failure to request reversal and rendition in his prayer for relief limits the authority of the appellate court to grant rendition on a no evidence point. We see no legal or practical basis for such a limitation. If the no evidence point is clearly stated as in this case, an appellee will have sufficient notice to alert him that he needs to respond to this point. In this situation no prejudice will result to the appellees because of appellant's incomplete prayer for relief. We hold that the failure of a prayer for relief to request rendition does not prevent an appellate court from granting such relief on a meritorious no evidence point of error which is clearly presented in an appellant's brief. This holding is consistent with Rule

422 of the Texas Rules of Civil Procedure which states that substantial compliance with the briefing rules will suffice if in the interest of justice.

In determining whether there is some evidence to support the jury's finding of gross negligence, this court "must look to all the surrounding facts, circumstances, and conditions, not just individual elements or facts ... [T]he existence of gross negligence need not rest upon a single act or omission, but may [be found] from a combination of negligent acts or omissions ..." *Burk Royalty*, 616 S.W.2d at 922. Additionally, "all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor." *Id.*, citing *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex.1970). All evidence contrary to the verdict is to be ignored.

The evidence in this case shows that it was a common practice of appellant to leave a "cherrypicker" parked along the roadside where it would partially obstruct a traffic lane. No flagman, warning devices, or barricades were ever placed around the parked cherrypicker. A car driving in the lane obstructed by the "cherrypicker" would have to cross into the opposing lane of traffic to safely pass it.

We hold appellant to the standard of a reasonable person. We infer that appellant had knowledge of the peril created by the parked "cherrypicker" because such peril would be recognized by a reasonable person. Thus, we find some evidence of the first element of gross negligence (i.e. knowledge of the peril).

The evidence also shows that it was a practice of the appellant for several years to park the "cherrypickers" so that they would obstruct traffic lanes. The appellant has not shown that placing a flagman, warning device, or a barricade would be unreasonable. We find that the appellant's creation of a risk on numerous occasions when the degree of risk could have

been reduced through reasonable means constitutes some evidence of a conscious indifference to the safety of appellees. Lesser evidence than that in the present case has been found by Texas appellate courts to constitute some evidence of gross negligence. For example, in *Poole v. Missouri Pacific R.R.*, 638 S.W.2d 10 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.), the court found that the defendant's placement of a cement mixer tank where it obstructed motorists' view of an approaching train at a railroad crossing was evidence of the defendant's conscious indifference to the safety of motorists.

We next consider appellant's contention that this cause should be remanded for retrial of the issue of gross negligence because there is insufficient evidence to support the jury's finding of gross negligence. In reviewing this contention we must consider and weigh all the evidence in deciding the question and reverse the judgment only if the verdict is so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Earlier in this opinion we discussed the evidence in support of this finding. The evidence against this finding is that the "cherrypicker" was parked in broad daylight and in plain view. The road on which the cherrypicker was parked was completely straight with the exception of one curve located about 100 yards from it. In these conditions a driver keeping a proper lookout could have seen the "cherrypicker" in time to stop or safely maneuver around it. This conclusion is consistent with the jury's finding that appellee Dyson failed to keep a proper lookout. Also, the appellant had parked the "cherrypickers" in this manner for several years without the occurrence of a collision. All this evidence weighs heavily toward the conclusion that appellant, under all the circumstances, did not know that parking the "cherrypicker" in plain view created an unreasonable peril. As discussed earlier, knowledge of the peril by the defendant is an essential element of gross negligence. We conclude that there is insufficient evi-

dence to support the jury's finding of gross negligence and appellant's final point of error is sustained.

We reverse the portion of the trial court's judgment which awards compensatory damages to Darrell Dyson and punitive damages to Darrell Dyson and David Casas Jr. Because we have determined that the trial court erred in failing to reduce the $16,404.17 compensatory damages awarded to Darrell Dyson by 25%, the percentage of Dyson's comparative negligence, we render judgment that Darrell Dyson recover only twelve thousand three hundred and three and thirteen one hundreths dollars ($12,303.13) as compensatory damages. It is our opinion it was error to award punitive damages when there was insufficient evidence to support the jury's finding of gross negligence. Such error affects only a part of the matter in controversy. The issue of gross negligence is separable from the rest of the controversy, and a partial remand would not result in unfairness to the parties. We therefore remand for a new trial of only the issues of gross negligence and punitive damages. TEX.R.CIV.P. 434. We are aware of the general rule that the allowance of partial remand Rule 434 does not contemplate the trial of an indivisible cause of any action by piecemeal. *Waples-Platter Co. v. Commercial Standard Insurance Co.,* 156 Tex. 234, 294 S.W.2d 375 (1956); *Texas Employers' Ins. Ass'n v. Lightfoot,* 139 Tex. 304, 162 S.W.2d 929 (1942).

However, we believe negligence and gross negligence to constitute two separable causes of action as gross negligence requires proof of the mental attitude of the defendant and ordinary negligence does not and the means by which damages are assessed for each action is different. In this instance where appellant has not challenged the jury's finding of ordinary negligence against it on appeal, it is particularly fair to remand solely on the issue of gross negligence. *See Young v. Hicks,* 559 S.W.2d 343 (Tex.1977).

We affirm the remainder of the trial court's judgment.

DRAUGHN, Justice, dissenting.

I respectfully dissent from the majority's holding that there was insufficient evidence to support the jury's finding of gross negligence.

Before proceeding with my analysis of the law on this point, I find it necessary to more fully develop the facts. The majority's opinion implies that the jury's finding that appellee Dyson failed to keep a proper lookout indicates that he failed to even see the cherrypicker in time to avoid it. However, I do not believe this to be the case. Dyson testified that he saw the cherrypicker soon after he rounded the curve but did not realize that it was a stationary object until he was approximately fifty yards from it. He had approximately five seconds in which to react and decided to pass the cherrypicker. Just as he began to pass, he saw a van rapidly approaching his vehicle from the opposite direction. He had not seen the van when he first considered passing the cherrypicker because it was in a dip in the road. Dyson re-entered his own lane in order to avoid a head-on collision. As he did, he collided with a leg steadying the cherrypicker which extended nearly to the middle of the road. Thus, there is evidence that but for the leg of the cherrypicker he could have completed his maneuver safely.

I do not argue with the jury's determination that Dyson was 25% comparatively negligent, for obviously an appellate court is not free to substitute its judgment for that of the jury if the evidence supports its findings. *See Missouri Valley, Inc. v. Putman,* 627 S.W.2d 829, 833 (Tex.App.—Amarillo 1982, no writ). I do, however, disagree with the use the majority apparently makes of this finding.

The majority incorrectly views the question of gross negligence from the standpoint of Dyson's conduct rather than from the mental state of appellant as mandated by the supreme court in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex.1981). The standard for determining the existence of

gross negligence was clearly explained therein:

What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care. Such conduct can be active or passive in nature.

*Id.* at 922 (emphasis in original). In other words, the mental attitude of the defendant is the key distinguishing factor between ordinary and gross negligence. Neither *Burk Royalty* nor its predecessors mention the plaintiff's comparative fault as a viable factor in this determination. Further, the majority cited no case, and I have been able to find none, sanctioning such an approach. I would add it is clear that the jury is entitled to infer from the circumstances or the defendant's actions that a state of mind existed which amounted to a conscious indifference on the part of the defendant. *See id.* However, as previously stated, an appellate court is not entitled to simply substitute its inferences for those of the jury if the evidence supports the jury's findings. *See Missouri Valley, Inc. v. Putnam*, 627 S.W.2d at 833.

The majority, in overruling appellant's "no evidence" point on gross negligence, "infers" that appellant had knowledge of the peril created by the obstructing cherrypicker because such peril would be recognized by a reasonably prudent person. They concluded that, although this was some evidence of gross negligence, it was not sufficient evidence.

On this latter point, the majority concludes, after considering and weighing all the evidence, that the jury's verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The basis for this conclusion is that the intruding cherrypicker was parked in broad daylight, in plain view, on a completely straight road with the exception of a curve 100 yards from the cherrypicker. After considering these factors, the majority determines that a driver keeping a proper lookout could have seen the "cherrypicker in time to stop or safely maneuver around it." They find this conclusion consistent with the jury finding that Dyson failed to keep a proper lookout. Coupling this chain of circumstances with the fact that appellant had parked the cherrypicker in an unguarded manner for several years without mishap, the majority reaches their ultimate conclusion that appellant did not *know* that parking the cherrypicker in such a manner created a peril. Thus, since knowledge of the peril is an essential element of gross negligence they conclude that the jury's finding thereof, under these circumstances, is against the great weight and preponderance of the evidence.

Summarized, the majority seems to say: (1) that the cherrypicker, while intruding half-way into a public street without warning equipment or flagmen, was parked under otherwise reasonably obvious and safe circumstances, and Dyson should have been able to avoid it; and (2) that the finding of improper lookout on Dyson's part and the fact that no accident had occurred for several years proved that there was no knowledge on appellant's part and, therefore, no gross negligence existed.

First, I suggest that the finding of improper lookout on Dyson's part is immaterial to the existence or non-existence of appellant's gross negligence. Second, the circumstances of the case from which the majority infers a lack of knowledge on the part of appellant are equally, if not more, susceptible to an inference on the part of the jury that the appellant knew of the peril, and just did not care. Finally, the fact that the concerned conduct had not resulted in any collision for several years is in no way determinative of the defendant's knowledge of the peril. I cannot believe that the result in *Burk Royalty* would have been any different if the tragic occurrence had happened several years later

without any intervening tragedies. It follows that the litmus test for grossly negligent conduct cannot be the length of time required for it to result in harm.

In any event, this court is not at liberty to substitute its inferences for those of the jury. I find the jury had sufficient evidence on which to base its finding of gross negligence. It viewed all of the evidence, as did we, and concluded that appellant was grossly negligent because it left a large, stationary piece of machinery on a public road but failed to give any warnings of its presence. As previously noted, appellant had but seconds to react after realizing the cherrypicker was stationary. Certainly, the jury was justified in answering the special issues in the manner in which it did. Even though a majority of this panel might wish to substitute its judgment for that of the jury, we simply are not at liberty to do that. I would affirm the judgment with regard to the findings of gross negligence.

I do, however, agree with my brethren that the trial court erred in not reducing Dyson's actual damages by 25%, the percentage of his comparative negligence. I would, on the other hand, affirm the full amount of the exemplary damages awarded notwithstanding a contrary holding in *Pedernales Electric Cooperative, Inc. v. Schulz*, 583 S.W.2d 882 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). In *Pedernales*, the court held that both actual and punitive damages should be reduced by the percentage of the plaintiff's comparative negligence. *Id.* at 885. The court grounded its opinion on the wording of TEX.REV. CIV.STAT.ANN. art. 2212a (Vernon Supp. 1984). I do not read art. 2212a to require such a reduction in punitive damages. The purpose of such damages is to punish and deter grossly negligent conduct. To allow a reduction of such damages based on a plaintiff's simple negligent conduct would, in my opinion, dilute the deterrent effect of exemplary damages.

The judgment should be reversed and rendered for appellee Dyson in the amount of $12,303.13 actual damages and affirmed in all other respects.