**Reversed and Remanded and Substitute Opinion filed August 27, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00724-CV

_____

### GUILLERMO GARZA D/B/A WILHOME BUILDERS & CONSTRUCTION, Appellant

### V.

### JESSE CANTU, Appellee

_____

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-36738**

_____

## S U B S T I T U T E   O P I N I O N

We issued an opinion in this case on May 11, 2013, reversing the trial court's judgment notwithstanding the verdict (JNOV) and remanding for a new trial. Appellee subsequently filed a motion for rehearing. Without changing the disposition of the case, we deny the motion for rehearing, withdraw our previous opinion, and issue this substitute opinion in its place.

Guillermo Garza, doing business as Wilhome Builders and Construction, ("the builder") sued Jesse Cantu ("the buyer") for breach of a construction contract. After the jury returned a verdict for the builder, the buyer moved for JNOV, arguing that the jury's damages calculations lacked evidentiary support. The trial court granted the motion. We conclude that although the damage amounts found by the jury are not supported by legally sufficient evidence, the builder nonetheless introduced evidence of some amount of damages as defined in the charge. We therefore reverse the trial court's JNOV and remand for a new trial.

## BACKGROUND

The events giving rise to this case are not complicated. The parties agreed in writing that the builder would construct a duplex home for the buyer. When the project was nearly finished, the builder informed the buyer of cost overruns that significantly exceeded the project's estimated price. The buyer refused to pay for these overages or to authorize a final payment of the outstanding portion of the estimated price. The builder sued the buyer, and the jury rendered a verdict in favor of the builder.

The issues before us relate primarily to the jury's findings of damages, so we explain the terms of the parties' written contract and the figures at issue in some detail. The parties agreed that the home's price would be "based on cost plus" a 15% "Builder[']s Consulting Fee." In so-called cost-plus contracts like this one, "the contractor is to be reimbursed for costs of materials and labor by the owner and is to receive a stated percentage of such costs as his profit." *Burditt v. Sisk*, 710 S.W.2d 114, 118 (Tex. App.—Corpus Christi 1986, no writ) (internal

2

quotation marks omitted). Here, the contract's relevant language is as follows:[1]

> Total price of house, including current changes and additions, is as follows
>
> . . . .
>
> | BASED ON COST PLUS | |
> |---|---|
> | Builders Consulting Fee 15% | $31,877.82 |
> | Builders Sale Price | $244,396.65 |
> | Sale Price Per Square Foot | $61 |
>
> Estimates for this job cost are based on and not limited to what the Buyer may choose for his or her customization on this project.

The buyer obtained a loan for the $244,396.65 sale price, which represented a total estimated construction cost of $212,518.83, plus a 15% builder's fee of $31,877.82. As the builder completed certain portions of the work on the project, he requested payment from the buyer's lender. The lender would inspect the completed work and release a portion of the authorized funds commensurate with the work accomplished. In this way, the builder received $219,945.75 of the $244,396.65 estimated sale price. Only $24,450.90 of the sale price remained to be paid.

As the time for this remaining payment approached, the builder informed the buyer that the project was $55,713.40 over budget. The builder would later testify that these overages resulted from the buyer's selection of materials and from delays early in construction. The overages made the project's total cost $268,232.23 instead of the $212,518.83 estimate; this change increased the builder's 15% fee by $8,357.01.

The buyer balked at paying the overages, so the builder stopped work and filed a mechanic's lien. Although the home passed the lender's final inspection,

---

[1] Before beginning construction, the parties reduced the estimated price with an addendum that was to be read with the contract "as if contained therein." The quoted language therefore incorporates the amended price into the initial contract's language.

the buyer refused to release the final payment of the estimated sale price to the builder. The builder sued the buyer for $88,521.31: the total cost of construction (including overages) plus his 15% fee less the amount already paid.

At trial, the parties contested the amount of work remaining when the builder left the project. The buyer argued that considerable work remained and that the builder breached the contract by leaving this work unfinished. The builder testified that "[a] couple punch-out items" remained.

The jury found that the buyer breached the contract and that the builder did not. The jury was also asked to find two "elements" of the builder's damages, which we discuss in detail in our analysis below. Each element was submitted to the jury without objection, and each required the jury to determine (among other things) the cost to complete the remaining work.

For the first damages element, called "Loss of Contractual profit," the jury awarded $24,450.90—the unpaid portion of the estimated sale price. For the second element, called "Loss of Contractual Profit Plus Expenses Incurred Before Breach," the jury awarded $55,713.40—the amount that the project went over budget. The jury did not award the builder his 15% fee for the overages, so the total jury award was $8,357.01 less than the builder sought.

The buyer moved for JNOV, arguing in part that the jury's damages findings were unsupported by the record. The buyer contended, among other things, that the record contained no evidence of the cost to complete the remaining work. Because the jury was told to use this cost in calculating each element of damages, the buyer argued that the jury's findings lacked evidentiary support. The trial court granted the buyer's JNOV motion and rendered a take-nothing judgment. The builder appealed.

4

## I.  Standard of review

We review a JNOV under a no-evidence standard, meaning we credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Id.* Because there was no objection to the charge submitted, we measure the evidence by the charge as given. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009); *Osterberg v. Peca*, 12 S.W.3d 31, 54–55 (Tex. 2000).

The builder argues that the JNOV must be reversed because the jury's findings are supported by legally sufficient evidence. The buyer, for his part, raises two bases for affirming the JNOV. First, the buyer contends that we must affirm because the builder's brief failed to address all points raised in the JNOV motion below. Second, the buyer re-urges his argument that the jury's damages findings are not supported by legally sufficient evidence. We address these arguments in turn.[2]

## II.  The builder's appellate brief addressed every basis for JNOV raised in the buyer's motion below.

Generally, when an appellant fails to attack all independent grounds that support an adverse ruling, we must affirm. *See Britton v. Texas Dept. of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.). This

---

[2] The builder has also argued that the jury's award of $0 in attorney's fees is against the great weight and preponderance of the evidence. Because we remand for a new trial, we do not address this argument.

general rule applies in the JNOV context: when a trial court grants a motion for JNOV presenting multiple grounds but does not state the ground relied upon, the appellant has the burden of showing that the judgment cannot be sustained on any of the grounds stated in the motion. *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991).

Relying upon these rules, the buyer argues that we must affirm the JNOV in his favor because the builder's appellate brief neglected to attack one of the bases for JNOV that the buyer presented to the trial court. Specifically, the buyer contends that the builder failed to address the JNOV ground of "legally insufficient evidence to support the jury's finding that damages resulted from [the buyer's] failure to comply [with the contract]." On appeal, the buyer characterizes the "resulted from" language in this ground as attacking the builder's failure to prove "causation." The buyer argues that the builder's brief overlooked this causation basis for granting JNOV. We disagree.

Assuming for argument's sake that causation was a separate JNOV ground that the builder had to address in his brief, we conclude that the builder's discussion of damages attacked this ground. The "resulted from" language upon which the buyer focuses appeared in a question that submitted both causation and damages to the jury. The builder addressed the sufficiency of the evidence supporting the jury's answers to this question in a section of his brief captioned "[The Builder] Presented Sufficient Evidence to Sustain The Jury's Findings That Damages Resulted From [the Buyer's] Breach." The section argues that "[h]ad [the buyer] not breached the contract, [the builder] was ready and able to carry out the contract and complete the duplex construction." It also argues that the damage elements accurately reflect the damages caused by the buyer's noncompliance and were therefore properly submitted. We understand these arguments to address not

6

only damages, but also causation.

In any event, the builder's combined analysis of causation and damages is consistent with the way the parties have treated those two issues throughout the proceedings; we see no reason to change the rules now. The parties submitted both issues to the jury in a single question, and the buyer requested JNOV based on both issues in a single sentence. Only now, when the builder addresses the evidence supporting the jury's finding on that question in a single section of his brief, does the buyer contend that the causation issue has not been adequately addressed. Yet the buyer has not explained what separate causation argument the builder failed to address.[3] Accordingly, we hold that the builder addressed all grounds for JNOV presented to the trial court, and we proceed to the appeal's merits.

## III. Because no evidence supports the amounts of damages found by the jury, a new trial is required.

The parties dispute whether legally sufficient evidence supports the jury's awards of damages. We note at the outset that the source of this disagreement is the poor fit between the elements of damages submitted to the jury and the facts of this case. The two submitted elements of damages precisely track two of the sample elements of contract damages in the Pattern Jury Charges (PJC), and

---

[3] Not even the buyer's appellate brief argues that causation presents a basis for JNOV that is distinct from the damages issues. While arguing that the builder failed to brief the causation issue, the buyer himself declines to press a lack of causation evidence as a separate basis for upholding the JNOV on appeal. Nevertheless, to the extent there is a separate causation ground that presents a live issue, we conclude that the evidence discussed in this opinion supports the jury's finding that the builder's damages resulted from the buyer's failure to comply with the contract.

The buyer also argued for JNOV below on the ground that there is legally insufficient evidence of breach. The builder attacked this ground in his appellate brief, and the buyer did not respond. To the extent the breach ground presents a live issue, we conclude that the evidence discussed in this opinion and in the builder's brief supports the jury's finding that the buyer breached the parties' contract.

7

neither the parties nor the trial court attempted to tailor those elements to the evidence presented.[4]

The damages question asked the jury, "What sum of money, if any, if paid now in cash would fairly and reasonably compensate [the builder] for his damages, if any, that resulted from [the buyer's] failure to comply?" The jury was instructed to consider only two elements of damages. The first element was

> Loss of Contractual Profit: The difference between the agreed price and the cost [the builder] would have incurred in the construction of [the] residential duplex . . . .

The jury found this amount to be $24,450.90, which is the amount of the final payment that the buyer never authorized. In other words, this figure reflected the unpaid portion of the estimated sale price to which the builder claimed he was

---

[4] The comment to the PJC's contract damages instructions explains that "[b]ecause damages instructions in contract suits are necessarily fact-specific, no true 'pattern' instructions are given." STATE BAR OF TEXAS, PATTERN JURY CHARGES: BUSINESS, CONSUMER, INSURANCE & EMPLOYMENT, PJC 115.4 cmt. at 291 (2012). The drafters of the pattern charges intended these instructions to be "illustrative only" and noted that the instructions "must be rewritten to fit the particular damages raised by the pleadings and proof." *Id.*

Such attention to the evidence was especially important here because this litigation involved a cost-plus contract. In these contracts, "[t]he builder's profit . . . is . . . a contractually defined percentage of costs . . . ; it is not the difference between costs and a contractually fixed price." *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 442 (Tex. 1993). Thus, when the contract is cost-plus, a jury's calculation of the difference between the estimated price and the costs incurred is unlikely to reflect the actual damages suffered. On appeal, the buyer's brief observes that the evidence would have supported the jury's awards if different instructions had been used for the damages elements, such as: "[the] amount [necessary to compensate the builder] for work [he] . . . completed, but for which no payment had been made"; and "[the] amount [necessary to compensate the builder] for overages representing expenses [he] incurred in addition to the agreed-upon price in the contract."

We express no opinion regarding the adequacy of these instructions. In addition, because no party objected to the damages elements submitted to the jury, we do not reverse based on any defect in the charge. Rather, as explained below, we reverse the buyer's JNOV because there is evidence of some damages as measured by the elements submitted. This holding requires a remand for a new trial. When preparing the contract damages questions for the next trial, we suggest that the parties and the trial court undertake the fact-specific evaluation of the evidence that the PJC drafters recommend.

entitled.

> The second damages element was
>
> Loss of Contractual Profit Plus Expenses Incurred Before Breach: The amount [the buyer] agreed to pay [the builder] less the expenses [the builder] saved by not completing the construction of [the] residential duplex . . . .

The jury determined that this amount was $55,713.40, which is the difference between the estimated cost of construction and the actual costs the builder allegedly incurred. In other words, this answer corresponds to the cost overruns that the builder allegedly paid for during construction and sought to recover from the buyer.

Neither party objected that these elements of damages were improper, so the builder can recover them if the amounts awarded by the jury are supported by legally sufficient evidence. *Akin, Gump, Strauss, Hauer & Feld*, 299 S.W.3d at 112; *Cosgrove v. Grimes*, 774 S.W.2d 662, 666 (Tex. 1989). We use the charge as given to determine whether the evidence supports the jury's award for each element of damages. *Osterberg*, 12 S.W.3d at 54–55.

**A.  Although the builder presented some evidence of damages, no evidence supports the jury's finding that the "difference between the agreed price and the cost [the builder] would have incurred" was $24,450.90.**

The first damages element required the jury to determine the difference between (1) the "agreed price" and (2) the "cost [the builder] would have incurred in the construction of [the] . . . duplex." The jury was not asked about each component individually, but found the difference between the two components to be $24,450.90. The builder's arguments regarding the sufficiency of the evidence focus primarily on the price component, while the buyer's arguments focus on the cost component.

9

As we explain below, the jury could have found the price component to be $24,450.90, the unpaid portion of the estimated "Builder[']s Sale Price" to which the parties agreed in their contract. The buyer does not dispute that there is legally sufficient evidence of the price component, but he offers two other arguments in defense of the JNOV. First, he attacks the cost component, arguing that there is no evidence of any cost the builder would have incurred in constructing the duplex because he had already finished construction. We disagree because both parties offered evidence of work that remained to be completed and presented different figures for the cost of that work. None of those figures was zero, however. Thus, we agree with the buyer's second argument that no evidence supports the jury's finding that $24,450.90 is the difference between the price and cost components. Nevertheless, because there was some evidence of damages, we reverse the JNOV and remand for a new trial.

### 1. The jury could have found that the agreed price was $24,450.90.

The builder argues that the trial court erred in granting JNOV because there is legally sufficient evidence to support the jury's award of $24,450.90 for the first element of damages—loss of contractual profit. Specifically, he points to undisputed evidence showing that this amount was the unpaid portion of the agreed sale price, which he did not receive because the buyer refused to sign off on the final draw.

In response, the buyer does not contend that there is legally insufficient evidence of the "agreed price" component of this damages element. Instead, he argues that the price component had to be $244,396.65 because the undisputed evidence showed that this was the sale price stated in the parties' contract.

We conclude that the jury could reasonably have interpreted the price

10

component to include only the unpaid portion of the agreed price—$24,450.90—because that reading is consistent with the damages question as a whole. The question asked the jury to determine what damages "resulted from" the buyer's noncompliance with the contract. If the term "agreed price" referred to the entire $244,396.65 builder's sale price, as the buyer contends, the first damages element would not account for the payments the buyer already made. The builder would be awarded damages for payments he had already received—damages that undisputedly did not "result from" the buyer's noncompliance.

We must read jury instructions like jurors do—with common sense. *Nip v. Checkpoint Sys., Inc.,* 154 S.W.3d 767, 772 n.3 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Interpreting the first damages element to require an award of amounts already paid does not make sense and would ignore the charge's "resulted from" language. Instead, viewing the charge as a whole, the jury could reasonably have understood the "agreed price" component to mean "the unpaid portion of the agreed price," which was $24,450.90. *Cf. Chubb Lloyds Ins. Co. of Tex. v. Andrew's Restoration, Inc.*, 323 S.W.3d 564, 580 (Tex. App.—Dallas 2010) (construing the phrase "[t]he value, if any, of the work performed by [plaintiff]" to mean "the value of the work that [plaintiff] was not paid for" in order to interpret instruction consistently with verdict), *aff'd in part, rev'd in part on other grounds*, 364 S.W.3d 817 (Tex. 2012).[5]

---

[5] We note that even if the buyer were correct that the price component had to be $244,396.65, that would not change the outcome of this case. As discussed below, the parties offered a range of evidence regarding the cost component. Yet none of the cost figures within that range, if subtracted from a price of $244,396.65, would equal $24,450.90—the amount awarded by the jury. Because there was evidence of some amount of damages, however, a new trial is required as explained below.

11

### 2. *There is no evidence that the builder would have incurred zero cost in completing the project.*

The buyer offers two principal arguments in defense of the JNOV. First, he focuses on the cost component of the first damages element, contending that there is no evidence of any "cost [the builder] would have incurred in the construction of [the] . . . duplex." Indeed, he says, the evidence conclusively shows the absence of any such cost because the builder had completed the project. We disagree.

Although the builder did testify that he had "finished everything [he] had to finish," he also said that some work remained. The builder explained that, when he walked away from the project, an inspection report by the buyer's lender showed the house was 99.1% complete. For example, the builder testified that some housecleaning, touch-up painting, and work related to the lights remained. The builder also said that there remained "[a] couple [of] punch-out items," described as "[s]ome last-minute repairs and installation of . . . very small things." In total, according to the lender's report, 0.9% of the project—which equaled $1,872.62 of the budgeted cost—remained to be completed.

There was also considerable testimony from the buyer about work that he contended the builder had left unfinished, including testimony about the cost incurred to complete that work. For example, the buyer testified that the building's "electrical, plumbing, and HVAC" were not up to code and that the building was ineligible for an occupancy certificate. He testified that "there were still wires hanging out of all the things in the wall, and all that had to be finished." The buyer described one unit of the duplex as "90 percent complete" and the other as "70 to 75 percent complete."

The buyer also said that he employed replacement contractors "every day for a couple of months" to complete the home at a cost of "around 15,000" dollars.

12

The replacement contractor in charge testified that he worked on the house for a total of "24 to 36 hours, but [he] would only come in the afternoons . . . . So [the work] probably drug out for about two months." He testified that he billed approximately $6,600.

Thus, contrary to the buyer's contention, the jury heard considerable evidence of remaining work and of costs that the builder "would have incurred" had he stayed on the project. Based upon this evidence, the jury could have found, for example, that the builder would have incurred an additional $6,600 in costs: the cost of the replacement contractor. The jury could have found that the builder would have incurred $1,872.62: the costs of completing the budgeted items according to the lender's report. The jury also could have found that the builder would have incurred $15,000: the amount the buyer said he spent to complete the project. Subtracting these amounts from an agreed price of $24,450.90, the evidence would have supported answers to the first damages element as low as $9,450.90 or as high as $22,578.28. Accordingly, we reject the buyer's argument that there was no evidence of any costs the builder would have incurred.

The buyer's second argument is that no evidence supports the jury's finding that $24,450.90 is the difference between the price and cost components. We agree. Because the jury apparently concluded that the price component was $24,450.90, it necessarily found that "the cost the builder would have incurred" was $0. Although some evidence supports the price figure, all parties' evidence at trial was contrary to a $0 cost figure. Whatever cost the builder would have incurred in completing the construction, it would have been more than $0. Thus, the difference between the cost the builder would have incurred and the $24,450.90 unpaid price had to be some amount less than that price. As a result, we hold that the jury's award of $24,450.90 for the first element of damages is not supported by

13

legally sufficient evidence. *See Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 425 (Tex. 2008) (where evidence established that at least some charges were reasonable and necessary, no evidence supported decision to award no charges).

**B.      No evidence supports the jury's finding that the difference between the "amount [the buyer] agreed to pay" and "the expenses [the builder] saved" was $55,713.40.**

The second element of damages also required the jury to determine the difference between two components: (1) "[t]he amount [the buyer] agreed to pay [the builder]," less (2) "the expenses [the builder] saved by not completing the construction."  The jury found this difference to be $55,713.40.  For reasons similar to those just explained regarding the first element, we agree with the buyer that the jury's award of damages for the second element is not supported by legally sufficient evidence.  While the jury's apparent conclusion that the buyer agreed to pay the builder $55,713.40 has support in the record, its conclusion that the builder saved no expenses by leaving the project unfinished does not.

The jury's award of $55,713.40 for the second element matches the amount by which the builder testified the project went over budget—overages that, according to the builder, the buyer "agreed to pay."  Specifically, the builder points to the parties' contract, which states the "[t]otal price" is "BASED ON COST PLUS," and that "[e]stimates for this job cost are based on and not limited to what the Buyer may choose for his or her customization on this project."  The builder also offered evidence that the buyer's customization choices and delays early in construction resulted in additional costs of $55,713.40.  For example, the builder testified that initial permitting delays put the project over budget before it even began.  He also explained that the buyer selected medium- to high-priced "fit and finish" items, such as cabinets, flooring and light fixtures.  Some of these items cost more than the builder had budgeted.  Given this evidence, the jury could

14

reasonably find that the agreed payment component of this damages element was $55,713.40.[6]

By way of a conditional cross-issue,[7] the buyer responds that this evidence cannot be considered in computing contract damages because any agreement regarding the overages was oral, but the charge defined a "contract" as "a promise or set of promises, in writing." According to the buyer, there is no evidence that any overage damages resulted from a breach of the parties' written contract. We disagree.

Although the parties never agreed to the amount of the overages in writing, the evidence summarized above permitted the jury to conclude that the buyer agreed in the written contract to pay for overages. As noted, the contract stated that the "[t]otal price" is "BASED ON COST PLUS." While the contract contained figures for the total sale price and the builder's consulting fee, it explained that these "[e]stimates" were "based on and not limited to what the Buyer may choose for his . . . customization." Given this evidence, the jury could reasonably have found that the parties' written contract included an agreement that

_____

[6] Of course, it would also have been reasonable for the jury to find that the amount the buyer agreed to pay was $244,396.65—the sale price stated in the contract. That finding would not change the outcome of this case, however. As discussed below, the parties offered a range of evidence regarding the expenses saved component. Yet none of the cost figures within that range, if subtracted from a price of $244,396.65, would equal $55,713.40—the amount awarded by the jury. Because there was evidence of some amount of damages, however, a new trial is required as explained below.

[7] The parties do not address whether the elements of damages here are "separable without unfairness to the parties," allowing us to affirm the JNOV on the second element—as the buyer's cross-issue requests—while remanding the first element for a new trial. Tex. R. App. P. 44.1(b); *cf. Cheek v. Humphreys*, 800 S.W.2d 596, 600 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (remanding for new trial on one element of damages). For reasons apart from the cross-issue, however, we conclude below that both elements must be remanded. Thus, regardless of whether a cross-issue is proper here, the issue the buyer identifies is likely to arise again on retrial, and we address it in the interest of judicial economy. *See English v. English*, 44 S.W.3d 102, 104 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

the buyer would pay for the total cost of construction even if that cost exceeded the estimated price stated in the contract.

The buyer next attacks the second component of this damages element, arguing that there is no evidence of an amount the builder saved by not completing construction. We disagree. As explained above, the evidence showed that the builder would have incurred costs of at least $1,872.62 and perhaps as much as $15,000 in completing construction. By not completing construction, the builder saved these expenses. Subtracting these expenses from an agreed payment of $55,713.40, the evidence would have supported answers to the second damages element as low as $40,713.40 or as high as $53,840.78. Accordingly, we reject the buyer's argument that there was no evidence of any expenses the builder saved by not completing construction.

Finally, the buyer argues that no evidence supports the jury's finding that $55,713.40 is the difference between the agreed payment and the expenses saved. We agree. Although there was evidence that the agreed payment component was $55,713.40, there was no evidence that the expenses saved component was $0. Because all parties agreed that some expenses were saved by not completing construction, the difference between those expenses and the agreed payment had to be some amount less than $55,713.40. As a result, we hold that the jury's award of $55,713.40 for the second element of damages is not supported by legally sufficient evidence. *See Wagner & Brown, Ltd.*, 282 S.W.3d at 425.

C.  **Because the builder offered evidence of damages, but the evidence does not support the amounts of damages awarded by the jury, the buyer is entitled to a remand for a new trial.**

Because no evidence supports the amounts of damages that the jury awarded the builder, the buyer argues that we must affirm the trial court's JNOV that the

builder takes nothing.  We disagree.

When there is evidence to support some—but not all—of the damages awarded, it is not appropriate to render JNOV.  *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007).  As explained above, that is the situation here.  The conflicting evidence regarding costs and expenses saved supported a wide range of answers to both elements of damages submitted to the jury.  In such cases, the plaintiff has proved damages; his entitlement to recover them survives a fact finder's error in awarding too much.  *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 878–79 (Tex. 2010).  Accordingly, the trial court erred in rendering a take-nothing JNOV.

Nonetheless, the plaintiff is not entitled to any portion of the award that the evidence does not support.  In this situation, we may either suggest a remittitur or remand for a new trial.  *See Guevara*, 247 S.W.3d at 670.  We cannot suggest a remittitur here because, as discussed above, the evidence allowed the jury to award as little as $9,450.90 or as much as $22,578.28 for the first damages element submitted, and as little as $40,713.40 or as much as $53,840.78 for the second element submitted.  The record thus contains insufficient evidence for us to calculate a remittitur accurately.  We therefore remand for a new trial.  *See Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 582 (Tex. 2012); *Guevara*, 247 S.W.3d at 670.  Because the parties contested liability in the initial trial, a new trial on both liability and damages is necessary.  *See* Tex. R. App. P. 44.1(b).

On rehearing, the buyer argues that the builder's brief requested only rendition and did not include a request for remand or a general prayer, so we are powerless to remand and must affirm the erroneous JNOV.  Though the builder referred to rendition in the body of his brief, in his prayer, the builder requested reversal without specifying the appropriate disposition.

17

In any event, whether the builder failed to request a remand or instead failed to request any disposition is beside the point. For the reasons given above, the builder is entitled to the reversal he prayed for, and we look to the appellate rules for the appropriate disposition. "[I]t is [the relevant appellate rule], and not the prayer for relief, that determines the disposition of the case." *Kaspar v. Thorne*, 755 S.W.2d 151, 157 (Tex. App.—Dallas 1988, no writ).[8] Thus, as we held in *Olin Corp. v. Dyson*, "the failure of a prayer for relief to request [a particular disposition] does not prevent an appellate court from granting such relief on a meritorious . . . point of error which is clearly presented in an appellant's brief." 678 S.W.2d 650, 657 (Tex. App.—Houston [14th Dist.] 1984), *rev'd on other grounds*, 692 S.W.2d 456 (Tex. 1985).

Under Texas Rule of Appellate Procedure 43.3, "[w]hen reversing a trial court's judgment, [we] *must* render the judgment that the trial court should have rendered" (emphasis added). Exceptions to this general rule allow a remand when, for example, further proceedings are necessary—as they are here because the trial court should have granted a new trial. *See* Tex. R. App. P. 43.3(a). In this way, Rule 43.3 "sets out two possible dispositions when [the appellate] court chooses to reverse a lower court's judgment: rendition and remand." *Kaspar*, 755 S.W.2d at 157. But nowhere does the rule suggest that when a trial court's judgment should be reversed, we must instead *affirm it* if the appellant fails to request the correct post-reversal disposition. And Rule 44.3 casts doubt on the practice of relying on formal defects or irregularities to transform a reversal into an affirmance. *See* Tex. R. App. P. 44.3 (court cannot "affirm or reverse a judgment . . . for formal defects

---

[8] *See also Majeed v. Hussain*, No. 03-08-00679-CV, 2010 WL 4137472, at *8–*9 (Tex. App.—Austin Oct. 22, 2010, no pet.); *Ibrahim v. Young*, 253 S.W.3d 790, 807 (Tex. App.—Eastland 2008, pet. denied); *Nat'l Cafe Servs., Ltd. v. Podaras*, 148 S.W.3d 194, 200–01 (Tex. App.—Waco 2004, pet. denied).

or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities"); *Kaspar*, 755 S.W.2d at 157.

The cases the buyer cites in support of its argument emerge from two Texas Supreme Court cases, but neither case undermines our holding that the builder is entitled to a remand under the rules. In *Stevens v. National Education Centers, Inc.*, the supreme court denied a petition for review because remand was the proper remedy and the petitioner "specifically requested that th[e] Court not remand for a new trial." 11 S.W.3d 185 (Tex. 2000) (per curiam). Courts have relied on *Stevens* to uphold erroneous rulings when the appellant expressly rejects the only available relief. Here, however, the builder did not adopt a "rendition-or-bust" strategy. Though he failed to request a remand, he did not reject that relief. Thus, *Stevens* does not apply here.

In *Horrocks v. Texas Department of Transportation*, the supreme court held that a party who preserved a legal sufficiency point in the trial court by filing a motion for new trial was not entitled to the greater relief of rendition on appeal. 852 S.W.2d 498, 499–500 (Tex. 1993) (per curiam). Instead, the rules required the appellate court to render the judgment the trial court should have rendered. *Id.* at 500. For a new trial motion, the appropriate relief was a new trial, not rendition of judgment.

*Horrocks* is inapposite here because the builder preserved its entitlement to a new trial in the trial court by filing a post-JNOV new trial motion. Indeed, the *buyer* also specifically requested a new trial in his JNOV motion.[9] Given the

---

[9] On appeal, the buyer also preserved the option of a remand for a new trial, including a general prayer in his brief for "such further relief to which he may be entitled." *See Ward v. Dallas Tex. Nat'l Title Co.*, 735 S.W.2d 919, 922 n.11 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (holding a "general prayer is sufficient for a remand for further proceedings"). Although we need not rely on the buyer's prayer to support a remand in this case, we note the supreme court has suggested that such reliance is proper in some circumstances. *See Tex. Prudential Ins. Co. v.*

evidence, the trial court simply erred in awarding the buyer more relief than he was entitled to receive on that motion.[10]

In sum, we agree with the builder's issue that the trial court erred in rendering JNOV. Under *Olin Corp.*, therefore, we award the builder the disposition authorized by the rules, which is a remand for a new trial as explained above.

## CONCLUSION

Because the builder offered some evidence of damages, we sustain the builder's principal issue in part and reverse the trial court's JNOV. The evidence does not support the full amounts of the jury's awards, however, so we remand for a new trial.

/s/ J. Brett Busby
   Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.

---

*Dillard*, 307 S.W.2d 242, 252 (Tex. 1957) (looking to respondent's brief to determine whether she requested a remand in the event the court agreed with petitioner's issue).

[10] The buyer argues on rehearing that our decision conflicts with *Lentino v. Cullen Center Bank & Trust*, which contains a statement that "[w]e cannot grant relief appellants do not request." No. 14-00-00692-CV, 2002 WL 220421, at *11 (Tex. App.—Houston [14th Dist.] Feb. 14, 2002, pet. denied) (mem. op., not designated for publication). But *Lentino* has no precedential value. *See* Tex. R. App. P. 47.7(b). In any event, even if *Lentino* had precedential value, we would not be bound by this part of the *Lentino* opinion to the extent it is contrary to the prior panel opinion of this Court in *Olin Corp. Compare Lentino,* 2002 WL 220421, at *11, *with Olin Corp.*, 678 S.W.2d at 657. *See Burnett v. Sharp*, 328 S.W.3d 594, 597–98 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (concluding that, if a panel of this Court does not distinguish or purport to apply a prior panel holding that is on point, a third panel of this Court is bound by the holding of the first panel rather than the second panel).